**J.C. BURDESHAW, Plaintiff,**

v.

**Kip SNELL, Defendant.**

**No. 1:03CV1220M.**

United States District Court, M.D. Alabama, Southern Division.

June 4, 2004.

946

David K. Hogg, Dothan, AL, for Plaintiff.

Kip Snell, Slocomb, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

McPHERSON, United States Magistrate Judge.

This case is before the court on a Motion to Dismiss (Doc. # 4), filed by defendant Kip Snell ["Snell"] on 5 March 2004. As an alternative to this motion, the defendant filed a Motion for More Definite Statement (Doc. # 4), which was denied on 17 March 2004 (Doc. # 5). For the reasons set forth herein, the court finds that the Motion to Dismiss is DENIED.

## I. FACTS AND PROCEDURAL HISTORY

The plaintiff, J.C. Burdeshaw ["Burdeshaw"], filed his complaint on 15 December 2003 (Doc. # 1). From the facts initially presented in his response to Snell's Motion to Dismiss, rather than in his complaint, the court has gleaned that Officer Snell arrested Burdeshaw on or about 7 December 2002, as a result of a routine stop after observing that he was not wearing a seatbelt (Doc. # 9, p. 2). The law requires that passengers and drivers wear seatbelts while on the road.[1]

By his own account, when he was stopped while driving in Slocomb, Alabama, Snell advised Burdeshaw that there may be outstanding warrants for his arrest in the State of Florida and that the dispatcher reported that he [Burdeshaw] he was driving with a suspended license (Doc. # 9, p. 2). When Snell checked Burdeshaw's driving history, he did not discover any outstanding warrants or evidence of a suspended license (Doc. # 9, p. 2). Nevertheless, Snell began questioning Burdeshaw, asking him to empty his pockets (Doc. # 9, p. 3). When Burdeshaw complied, Snell discovered a single pill bottle that contained a buffet of what appeared to be prescription drugs (Doc. # 9, p. 3).

Allegedly, Burdeshaw advised Snell that this single bottle contained all prescription medications. However, Snell, believing the bottle contained the controlled substance, Prednisone, arrested Burdeshaw. Although Burdeshaw was later indicted by the Geneva County, Alabama grand jury for the offense, the prosecution was terminated in his favor. This lawsuit followed.

The issues presented for resolution are: (1) whether Burdeshaw's federal claims are barred under the doctrine of qualified immunity, and (2) whether his state law claims are barred by § 6–5–338, *Code of Alabama*, 1975.

## II. STANDARD OF REVIEW

Ordinarily, "[a] motion to dismiss is only granted when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim

---

1. Section 32–5B–4, Code of Alabama, 1975, provides:

    (a) Each front seat occupant of a passenger car manufactured with safety belts in compliance with Federal Motor Vehicle Safety Standard No. 208 shall have a safety belt properly fastened about his body at all times when the vehicle is in motion.

which would entitle him to relief.'" *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir.), ***cert. denied***, 525 U.S. 1000, 119 S.Ct. 509, 142 L.Ed.2d 422 (1998) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "A court may dismiss a complaint 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Generally, the court must accept as true any allegations in the plaintiff's complaint when assessing a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). *Id.*

> The plaintiff need not set forth all the facts upon which the claim is based; rather, a short and plain statement of the claim is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests.

*Harris v. Procter & Gamble Cellulose Co.*, 73 F.3d 321, 324 (11th Cir.1996) (citations omitted).

■ The above standard of review is appropriate for and applicable to Burdeshaw's state law claims. However, the claims that he asserts pursuant to Section 1983 must be subjected to the "heightened pleading" standard as articulated in *Dalrymple et. al. v. Reno*, 334 F.3d 991 (11th Cir.2003).

> In examining the factual allegations of the complaint, we must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity. *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir.1998). In such cases, the complaint must allege the relevant facts "with some specificity." *Id.*

> "More than mere conclusory notice pleading is required.... [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Fullman v. Graddick*, 739 F.2d 553, 556–7 (11th Cir. 1984); see also *Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir.1995)(holding that complaint must "include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity").

*Dalrymple et. al. v. Reno*, 334 F.3d at 996.

Thus, to survive Snell's Motion to Dismiss his state law claims, Burdeshaw must simply set forth well-pleaded factual allegations for which relief may be granted if proven true, unless there are other bars. *See Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir.1985). To survive the Motion to Dismiss his Section 1983 claims, however, he must set forth, with some specificity, nonconclusory allegations of fact that would allow the court to determine whether qualified immunity is proper. Merely unsupported legal conclusions are improper. *Marsh v. Butler County*, 268 F.3d 1014, 1036 (11th Cir. 2001).

## III. DISCUSSION

"Burdeshaw is suing Snell in his individual capacity only" (Doc. # 9, p. 4), alleging federal and state law claims. Snell asserts the defenses of qualified immunity as to the federal claims and discretionary function immunity as to the state law claims. His federal claims fail, because they cannot survive the standard of review. The court specifically finds that Burdeshaw has failed to assert specific facts that would tend to support allegations that, if proven true, would present a *prima facie* case under Section 1983. Even if the pleadings

of his federal claims did meet the standard of review, however, the Motion to Dismiss would still be granted, because the suit is barred by the doctrine of qualified immunity.

### A. Federal Claims and Qualified Immunity

#### 1. General Principles

■ Snell has pled the affirmative defense of qualified immunity. The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Rich*, 841 F.2d at 1563. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Carr v. Tatangelo*, 338 F.3d 1259, 1266 (11th Cir.2003) citing *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

The test for whether a governmental defendant is entitled to qualified immunity from liability in his or her individual capacity involves a two-step analysis. *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Before applying the test, a government official first must demonstrate that " 'he [or she] was acting within the scope of his [or her] discretionary authority when the allegedly wrongful acts occurred.' " *Rich*, 841 F.2d at 1563–64 (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir.1983)).

If the defendant satisfies this burden, the first prong of the test requires the plaintiff to show either that the official's actions " 'violated clearly established constitutional law' " or a federal statute. *Id.; Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. However, "if a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.' " *Vinyard*, 311 F.3d at 1346 (quoting The court will address the first prong of the *Zeigler* inquiry, affirmed in *Hope*.) The evidence is undisputed that Snell was acting within his discretionary authority when he stopped Burdeshaw for driving without a seat belt and questioned him about the pills.[2] Snell was and is, after all, a city police officer whose responsibility includes enforcing traffic and drug laws. The undisputed facts reveal that his actions were undertaken pursuant to the performance of his duties and were within the scope of his discretionary authority. *Hutton v. Strickland*, 919 F.2d 1531, 1536 (11th Cir.1990).

■ Under the second prong, the court must determine whether the applicable law was clearly established at the time of the challenged action, that is, whether the defendant would have violated a clearly established right under the plaintiff's version of the facts. This is determined by reference to decisions of the Supreme Court of the United States and the Court of Appeals for the Eleventh Circuit. *D'Aguanno v. Gallagher*, 50 F.3d 877, 881 n. 6 (11th Cir.1995). The relevant inquiry is "fact specific," *Rodgers v. Horsley*, 39 F.3d 308,

---

**2.** Burdeshaw did not deny that he was not wearing a seat belt when he was stopped.

Nor did he contend that Snell searched him or his vehicle against his will.

311 (11th Cir.1994), and the plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional violation on "materially similar" facts. *Lassiter,* 28 F.3d at 1150.

### 2. Probable Cause to Arrest and False Arrest

The rights asserted by Burdeshaw, i.e., freedom from arrest without probable cause and false arrest, are constitutionally protected. "[A]n individual has a federally protected right to be free from unlawful arrest and detention resulting in a significant restraint of liberty, and violation of this right *may* be grounds for a suit under 42 U.S.C. § 1983" (Doc. # 9, p. 5 citing to *Babers v. City of Tallassee, Alabama,* 152 F.Supp.2d 1298, 1303 (M.D.Ala.2001)) (Emphasis added).

An arrest, however, does not violate the Fourth Amendment if a police officer has probable cause for the arrest. *See Lee v. Ferraro,* 284 F.3d 1188, 1194–95 (11th Cir. 2002); *Ortega v. Christian,* 85 F.3d 1521, 1525 (11th Cir.1996); *Von Stein v. Brescher,* 904 F.2d 572, 578 (11th Cir.1990). "For probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances." *Lee,* 284 F.3d at 1195.

■ The Court of Appeals, however, has decreed that, for purposes of analyzing qualified immunity, "arguable probable cause . . . a more lenient standard than probable cause", is the more appropriate inquiry. *Knight v. Jacobson,* 300 F.3d 1272, 1274 (11th Cir.2002). Arguable probable cause is present when "the facts and circumstances [are] such that the officer reasonably could have believed that probable cause existed." *Montoute v. Carr,* 114 F.3d 181, 184 (11th Cir.1997).

Pursuant to the Court of Appeals' definition, this court cannot determine whether there was "arguable probable cause" without analyzing the more traditional doctrine of probable cause". In other words, if a finding of arguable probable cause must rest upon an officer's reasonable belief that probable cause exists, the court's analysis must review essentially the same factors as have historically been reviewed.

The probable cause standard "is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Rankin v. Evans,* 133 F.3d 1425, 1435 (11th Cir.1998) (internal quotation marks omitted). "Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." *Lee,* 284 F.3d at 1195.[3]

■ In the instant case, in addition to Snell's acting within his discretionary capacity, the facts indicate that he had probable cause to stop Burdeshaw for failing to wear his seat belt. The facts point in another direction, however, regarding Snell's arrest of Burdeshaw for possession of prednisone. It is undisputed that when Snell became suspicious about the drugs in Burdeshaw's possession, the plaintiff advised him that there were medicine or bill bottles in his truck for all of the medicines in the pill bottle on his person. Snell refused to look in the truck.

Burdeshaw argues that "Snell had a duty to investigate this information and to release Burdeshaw upon ascertaining its

---

**3.** *See Marx v. Gumbinner,* 905 F.2d 1503, 1505–06 (11th Cir.1990) ("The existence of probable cause . . . is an absolute bar to a section 1983 action for false arrest."). n13

truth" (Doc. # 9, p. 7). The court agrees. By failing to acknowledge or investigate Burdeshaw's explanation, Snell essentially "assumed" that the substance was prednisone and that the plaintiff possessed them unlawfully. In so doing, Snell may have negated a "reasonable belief" that probable cause existed.

After all, ascertaining Burdeshaw's contention regarding the location of the prescription bottles is comparable to checking the glove compartment of a vehicle for a drivers license when the driver doesn't have it on his person, or checking the trunk of a vehicle for proof of insurance when it cannot be found inside the vehicle. In this connection, "[t]he court must decide whether the objective facts available to the officers at the time of arrest were sufficient". *Durruthy v. Pastor,* 351 F.3d 1080, 1088 (11th Cir.2003) (citing *United States v. Gonzalez,* 969 F.2d 999, 1003 n. 6 (11th Cir.1992)). The prescription bottles inside Burdeshaw's truck were "available" to Snell.

Under the circumstances of the arrest,[4] Snell could easily have checked Burdeshaw's truck for the prescription bottle. Indeed, Burdeshaw's voluntary disclosure of the location of the prescription bottle was arguably constructive consent to search his truck.

> "A police officer, upon an initial finding of probable cause, may [not] close his eyes to all subsequent developments.... Probable cause to arrest does not suspend an officer's continuing obligation to act 'reasonably.'"

*Babers v. City of Tallassee, Alabama,* 152 F.Supp.2d 1298, 1308 (M.D.Ala.2001) (citing *Thompson v. Olson,* 798 F.2d 552, 556 (1st Cir.1986), and *Gerstein v. Pugh,* 420 U.S. 103, 113–14, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)).

■ Snell did not act reasonably when he refused to investigate Burdeshaw's offer to prove that his possession of the drugs was lawful. Accordingly, he did not have probable cause to arrest the plaintiff for unlawful possession of a controlled substance. An officer may not ground even arguable probable cause upon mere speculation and ignore the impact of objective exculpatory evidence that is present at the scene of the arrest.

For these reasons, Snell is not entitled to assert qualified immunity at this juncture of the litigation.[5]

### 3. Malicious Prosecution

Snell also asserts qualified immunity as a defense to Count II of Burdeshaw's complaint and requests dismissal as a result (See Doc. # 4, p. 2). Consideration of Burdeshaw's claim that Snell violated his constitutional rights by maliciously prosecuting him is based on the same analytical framework articulated above.

The Court of Appeals has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983. *See Uboh v. Reno,* 141 F.3d 1000, 1002–04 (11th Cir.1998); *Whiting v. Traylor,* 85 F.3d 581, 584 (11th Cir.1996); *Kelly v. Curtis,* 21 F.3d 1544, 1554–55 n. 14 (11th Cir.1994)

■ To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the ele-

---

4. There is no claim that anyone else was present or that Burdeshaw posed any danger or threat to Snell.

5. At this "juncture", the court must construe the plaintiff's allegations as true. Thus, the court's conclusions are made in that context.

ments of the common law tort of malicious prosecution. *See Uboh,* 141 F.3d at 1002–04; *Whiting,* 85 F.3d at 584–86; *Kelly,* 21 F.3d at 1544, 1553–55 n. 15. To determine the constituent elements of the common law tort of malicious prosecution, the court relies upon both federal and state law.

In *Uboh,* the court examined both federal law and Georgia law and found that, the constituent elements of the common law tort of malicious prosecution included: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused. 141 F.3d at 1004. n16. Alabama law requires proof of the same elements to establish the tort of malicious prosecution. *Delchamps, Inc. v. Bryant,* 738 So.2d 824, 831–32 (Ala.1999).

Analyzing a malicious prosecution claim brought pursuant to § 1983, the Court of Appeals grounded the claim on the Fourth Amendment in *Wood v. Kesler,* 323 F.3d 872 (11th Cir.2003).

> In *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion), the Supreme Court concluded that the substantive due process component of the Fourteenth Amendment did not provide the constitutional source of a right to be free from malicious prosecution. But, the Court left open the possibility that the Fourth Amendment is the appropriate source of the right to be free from malicious prosecution. *Id.* at 274–75, 114 S.Ct. 807. While there is no definitive Supreme Court decision, our Court has recognized

the constitutional tort of malicious prosecution under the Fourth Amendment. 323 F.3d at 882.

■ Thus, while Snell was clearly acting within his discretionary authority when he arrested Burdeshaw, it is equally clear that Burdeshaw had a clearly established federal right to be free of malicious prosecution. In the two-pronged test articulated herein, the only remaining issue is whether the facts, as alleged by Burdeshaw would establish a violation of his constitutionally protected right.

In the context of the elements of malicious prosecution, Burdeshaw alleges in his complaint (and affirms in his response to the motion) that (1) Snell prosecuted criminal charges against him,[6] (2) without probable cause, (3) in an action which terminated in Burdeshaw's favor,[7] and (4) caused Burdeshaw damages.

Because Burdeshaw's allegations, if true, would establish a constitutional violation of malicious prosecution, the court must reject Snell's assertion of qualified immunity as a bar to the claim.

## B. State Law Claims

Burdeshaw also asserts state law claims of false arrest and "false" or malicious prosecution in Counts III and IV of his complaint.[8] In response, the defendants have requested an order dismissing the state law claims because Snell is entitled to discretionary function immunity pursuant to § 6–54–338(a), Code of Alabama, 1975, which provides:

> Every peace officer .... who is employed or appointed pursuant to the Constitution or statutes of this state, whether

---

6. Snell not only arrested him for drug possession, he testified before the Grand Jury which indicted Burdeshaw.

7. The charges against Burdeshaw were dismissed.

8. Burdeshaw mistakenly denominated Count IV and "Count II" (See Doc. # 1, p. 3).

appointed or employed as such peace officer by the state or a county or municipality thereof ... and whose duties prescribed by law ... include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

Citing *Couch v. City of Sheffield,* 708 So.2d 144 (Ala.1998), Snell acknowledges the Alabama Supreme Court's declaration that "this section extends discretionary function immunity to municipal police officers [such as Snell] ... unless the officer's conduct is so egregious as to amount to willful or malicious conduct or conduct engaged in in bad faith." 708 So.2d at 153. Snell implicitly argues that a finding that he is not entitled to statutory immunity would be based on "pure speculation". The court disagrees.

■ Unquestionably, Snell was performing a discretionary function when he arrested Burdeshaw. "Discretionary functions" are broadly defined as "those acts as to which there is no hard and fast rule as

to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." *Ex parte Duvall,* 782 So.2d 244, 248 (Ala.2000) (quoting *Ex parte City of Montgomery,* 758 So.2d 565, 569 (Ala.1999), quoting in turn *Wright v. Wynn,* 682 So.2d 1, 2 (Ala.1996)). As a municipal police officer, Snell is a "peace officer" as defined in the statute.

■ The issue then is whether, on the basis of the complaint and the plaintiff's response to the motion to dismiss, there is-or can be-a factual basis which divests Snell of his statutory immunity.[9] In *Couch,* upon which Snell relies, there was no allegation or evidence [10] of bad faith or malice. However, in a later opinion, the Alabama Supreme Court clarified the exception to automatic application of the doctrine of discretionary function immunity.

> Discretionary-function immunity, as is the case with State-agent immunity, is withheld if an officer acts with willful or malicious intent or in bad faith.

*Borders v. City of Huntsville,* 2000 Ala. LEXIS 222. Borders involved a plaintiff who was arrested on—and later acquitted of—charges of disorderly conduct and resisting arrest. He later sued the City of Huntsville, alleging excessive use of force, false arrest, false imprisonment, assault and battery, and malicious prosecution. The court found that, in the absence of any evidence of malice or bad motive, the officer was entitled to discretionary function immunity.

9. "Under discretionary-function-immunity analysis, a court first determines whether the government defendant was performing a discretionary function when the alleged wrong occurred; if so, 'the burden shifts to the plaintiff to demonstrate that the defendant[ ] acted in bad faith, with malice or willfulness in order to deny [him] immunity.'" *Scarb-*

*rough v. Myles,* 245 F.3d 1299, 1303 n. 9 (11th Cir.2001) (alteration in original) (applying Alabama law and quoting *Sheth v. Webster,* 145 F.3d 1231, 1239 (11th Cir.1998)).

10. The decision in *Couch* was one which reviewed a grant of summary judgment, instead oft a motion to dismiss.

The police officer who arrested Couch admitted that Couch "had simply been 'at the wrong place at the wrong time,' and that he [the officers] wanted the charge dismissed." He also admitted that "his primary motivation in arresting the plaintiff was the City's efforts and desires to stop alleged drug trafficking and drug use at the [site of the arrest]". Notwithstanding those admissions, the court affirmed the grant of summary judgment for the defendants in Couch's malicious prosecution and false imprisonment action because there was no evidence that the police officer acted improperly or in bad faith at the arrest site.

In contrast, Burdeshaw, who was arrested on drug possession charges, provided Snell with objective information which Snell simply failed to investigate. The minute effort required to ascertain the validity of Burdeshaw's claim that his drugs were legally prescribed (i.e., simply looking into his truck) underscores the potential in this case for a finding that Snell may have forfeited his entitlement to discretionary function immunity.

Accordingly, based upon the pleadings before the court, the court cannot find that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harper v. Blockbuster Entertainment Corp., supra.* Because Burdeshaw has affirmatively alleged malice, and because the court has determined that his malicious prosecution claim should survive the defendant's motion, he is entitled as well to prove that the malice he alleges exempts Snell from the benefit of discretionary function immunity. The motion to dismiss the state law claims, grounded on that immunity, is therefore denied.

### IV. CONCLUSION

The parties are ADVISED that the court's findings and decision on the motion to dismiss should not be construed as a finding on the defendant's liability or the ultimate validity of the plaintiff's claims. The burden on a defendant who files a motion to dismiss is a heavy one: First, the court must regard the plaintiff's version of the facts as true. Second, the movant must demonstrate that the plaintiff can prove no set of facts to establish his claim. Third, the movant must establish his entitlement to judgment as a matter of law, notwithstanding the court's acceptance of the plaintiff's statement of facts.

Thus, denial of the motion to dismiss should not be regarded as a finding on the merits of this case. The plaintiff still bears the burden of proving, during and after the fact-gathering process, that he was maliciously prosecuted and falsely arrested, in spite of the defenses asserted by the defendant.

In any case, for the reasons stated herein, it is ORDERED that the Motion to Dismiss is DENIED in all respects. The parties are DIRECTED to proceed with discovery and preparation for trial.

### FINAL JUDGMENT

In accordance with the order entered herewith, judgment is hereby entered in favor of the plaintiff and against the defendant.